**In re Ortansa MICHAELESCO, Debtor.**

**In re Daniel O. Michaelesco, Debtor.**

**Nos. 01–50330, 01–51006.**

United States Bankruptcy Court,
D. Connecticut.

July 29, 2004.

---

**468**

Ortansa Michaelesco, Fairfield, CT, pro se.

Daniel Michaelesco, Fairfield, CT, pro se.

Molly T. Whiton, Esq., Hartford, CT, Chapter 13 Trustee.

Ann. M. Nevins, Esq., Assistant United States Attorney, U.S. Attorney's Office, Bridgeport, CT, for Internal Revenue Service.

Elizabeth J. Austin, Esq., Pullman & Comley, LLC, Bridgeport, CT, for Robert Carr and Joelle Shefts, as Executors for the Estate of Bernice P. Richard, defendants in adversary proceeding 01–5086.

John P. Fahey, Esq., The Witherspoon Law Offices, Farmington, CT, for EMC Mortgage Corp.

## MEMORANDUM AND ORDER ON CONVERSION OF CASE # 01–50330 AND MOTION FOR RELIEF FROM AUTOMATIC STAY IN CASES # 01–50330 AND # 01–51006

ALAN H. W. SHIFF, Bankruptcy Judge.

This decision addresses a court generated order to show cause why Ortansa Michaelesco's chapter 13 case should not be converted to chapter 7 and a motion for relief from stay by EMC Mortgage Corporation ("EMC") in both chapter 13 cases.

## CONVERSION OF CASE # 01–50330

### Procedural History

On January 14, 2004, an order to show cause entered for Ortansa Michaelesco ("Ortansa") to "appear on February 3, 2004 ... to show cause, with all such evidence as she has, why her case should not be converted to chapter 7 pursuant to 11 U.S.C. § 1307." The chapter 13 trustee, the Internal Revenue Service (the "IRS"), EMC, and Robert Carr and Joelle Shefts, as Executors for the Estate of Bernice P. Richard (the "Executors"), appeared through counsel at the February 3rd hearing to argue that she had orchestrated unreasonable delay in the administration of her case which was prejudicial to creditors. *See* Tr. of 2/3/04 at 20, 22, 26, 31–33, 38.

At the conclusion of the hearing, Ortansa was ordered to file an affidavit by March 2, 2004 which included information about a claim in New York Surrogate's Court filed by her husband, Daniel Michaelesco ("Daniel"), an identification of the defendants in adversary proceeding 01–5086 (the "Adversary Proceeding"), the basis for her claim against each such defendant with an itemized list of damages, and what, if any, payments she had made to EMC.[1] The court also ordered counsel for the Executors to file a statement ex-

---

1. Ortansa's March 2, 2004 affidavit (the "Affidavit") failed to timely respond to all of the court's inquiries. Instead, she stated that she would "[w]ithin seventy days ... provide the Court, in the form of an Amended Affidavit with a complete list of damages arising out of the claims, the amount of the claims and the basis upon which I reached that number" and "[w]ithin seven days ... provide the Court, in the form of an Amended Complaint [sic], with the dates we made payments in this case to the holder of the first mortgage." Affidavit at 10. On March 8, 2004, the court entered an order that it would not consider any further supplement or amendment to the Affidavit because its February 3rd order in open court was a clear direction that a comprehensive affidavit was to be filed no later than March 2, 2004. Nonetheless, on March 9, 2004, Ortansa filed a supplement to Affidavit (the "Affidavit Attachment") identifying the dates of her alleged payments to EMC, discussed *infra* at 474–75. To give the debtor every reasonable opportunity to support her objection to the conversion of her case, the court will consider the Affidavit Attachment for purposes of this decision.

plaining her claim that the maximum recovery in the Adversary Proceeding would not be sufficient for Ortansa to fund a chapter 13 plan. On March 16, 2004, with the same parties appearing, Ortansa was given a second opportunity to present, with any evidence that she had, her arguments in opposition to the conversion of her case.

## Discussion

In relevant part, 11 U.S.C. § 1307 provides:

[A]fter notice and a hearing,[2] the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including–

(1) unreasonable delay that is prejudicial to creditors; . . .

(4) failure to commence making timely payments under section 1326 of this title . . . .

### Conversion for Unreasonable Delay–§ 1307(c)(1)

Chapter 13 cases are intended to be expeditiously administered. To achieve that policy, a debtor must file a bankruptcy plan within 15 days of filing a chapter 13 petition, *see* Rule 3015(b), and "shall commence making the payments [to the trustee] proposed by a plan within 30 days after the plan is filed," *see* § 1326(a)(1). Moreover, the payments provided for under chapter 13 plans, as distinguished from chapter 11 plans, are required to be com-

pleted within three years or, with court approval, five years. *Compare* § 1322(d) *with* § 1123.

Ortansa seeks to further delay the administration of her case until the Adversary Proceeding has been resolved. In assessing whether there has been an unreasonable delay that is prejudicial to creditors, the question is not limited to simply how much more time will likely pass before her case may be fully administered. The analysis must also consider her conduct in the context of bankruptcy policy and whether there is a reasonable possibility that, even including the Adversary Proceeding, she will ever be able to confirm a chapter 13 plan.

### *Ortansa Michaelesco's Bankruptcy History*

This is Ortansa's third chapter 13 bankruptcy case. Her first, case # 97–52353, was filed on November 24, 1997 and dismissed on May 4, 1999 for failure to have a plan confirmed. *See* § 1307(c)(5). Her second, case # 00–51066, was filed on August 31, 2000 and dismissed on January 25, 2001 for unreasonable delay that was prejudicial to creditors and for failure to have a plan confirmed. *See* §§ 1307(c)(1) & (5). The instant case was filed on March 19, 2001. In total, Ortansa has been a chapter 13 debtor for over sixty months without having a plan confirmed.

### *The Plan For The Instant Chapter 13 Case*

Ortansa's instant April 9, 2001 plan (the "Plan")[3] proposes payments to the trustee

---

**2.** Although § 1307 does not explicitly provide that the court may act *sua sponte,* the court has that authority under § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte,* taking any action or making any determination necessary or appropriate to enforce or implement

court orders or rules, or to prevent an abuse of process.").

**3.** At the February 3rd hearing, the chapter 13 trustee stated that she received a second plan dated May 21, 2002. *See* Tr. of 2/3/04 at 22. Although it was filed, it is not referenced on the docket because it was actually a letter to

for distribution to creditors of $888 per month for 60 months out of her disposable income, for a total of $53,280. However, her April 2, 2001 schedules list aggregate secured debt of $204,103.17, unsecured priority debt of $540.61, and unsecured nonpriority debt of $6,197.00. Moreover, she understated those scheduled debts. For example, the amount of the mortgage debt is $231,000, rather than the scheduled amount of $183,000.

At the show cause hearing, the trustee calculated that a 0% plan, *i.e.*, a plan that does not make any distribution to holders of allowed unsecured claims, would require a monthly payment of $3,262.50. *See* Tr. of 3/16/04 at 40. Accordingly, while the Plan states that the trustee will distribute payments to secured claimants until they have received 100% of the allowed amount of their claims, its proposal to pay $888 a month is merely 27% of the amount the trustee explained was required to achieve that result.

The trustee's calculation was based on Ortansa's estimate of the aggregate amount of secured claims, plus interest and the trustee's statutory fee, divided over a 60 month period. *See* Tr. of 3/16/04 at 44. Ortansa argued that the monthly amount required to adequately fund the Plan should be only $2,500, but even that amount was more than proposed by her Plan. Moreover, the trustee explained that Ortansa's calculation failed to include the interest, a part of the claim of the IRS, and the trustee's statutory fee. *See* Tr. of 3/16/04 at 41–44.

### The Ability to Fund A Modified, Confirmable Chapter 13 Plan

At the March 16, 2004 show cause hearing, Ortansa requested permission to modify the Plan, *see* § 1323(a), to increase her monthly plan payments to $1,000, an amount still 30% less than the amount that the trustee calculated would be needed to adequately fund a plan. Considering that Ortansa has had ample time to amend her Plan during the three years this case has been pending, the trustee aptly noted that her proposal was "too little too late for the purposes of this Chapter 13 plan." Tr. of 3/16/04 at 54.

Ortansa's schedules stated her net monthly income is $2,579.71 and net monthly expenses are $1,590.00. By those numbers, she has an insufficient disposable income of $989.72. Moreover, the trustee believed that the monthly expenses reported in her schedules were artificially low, *e.g.*, she understated her mortgage payments. *See* Tr. at 3/16/04 at 28–30. The trustee noted that in previous papers, Ortansa stated her monthly basic living expenses were $3,141.85. *See* docket # 28 at 2. The trustee calculated, on the basis of the most recent financial information the debtors sent her, that Ortansa and Daniel had combined monthly income of $4,933.25 after taxes. *See* Tr. at 3/16/04 at 25. Subtracting their monthly expenses from their net income yields a disposable income that is not sufficient for Ortansa to fund even a 0% plan, apart from the fact that all of their joint income would not be available since Daniel would need money to fund his own plan.

the chapter 13 trustee in both Ortansa's and Daniel's cases. In material part, it states that "All of our debts, my husband's and mine, are the responsibility and obligation of the Estate of Bernice P. Richard, which as shown throughout our bankruptcy cases and my adversary proceeding ... failed to fully pay my husband for work performed, failed to pay me

for work performed." Letter of 5/21/2002. Even assuming this letter was actually a properly filed plan, the trustee correctly noted that she "did not see how this plan can possibly be confirmed" since, *inter alia*, it does not provide for the full payment of § 507 claims, as required by § 1322(a)(2). *See* Tr. of 2/3/04 at 23.

While in some cases a plan is funded in part with the property of a debtor's estate, *see* §§ 306, 363 and 1303, Ortansa does not propose to borrow against her interest in the residence she shares with her husband. But even if she did, there is no available equity in that property. EMC presented uncontroverted evidence from its expert witness that the fair market value of their property is $260,000. EMC's debt is currently $231,000. A representative from the IRS testified that the residence is encumbered by liens for delinquent taxes in the aggregate amount of $97,066.65, as of the March 16th trial date.[4] There is also a judgment lien against the property filed by Charles Giametti, which was currently estimated to be in excess of $3,000. *See* Tr. of 3/16/04 at 15. Subtracting the sum of the liabilities from the value of the property demonstrates that neither Ortansa nor Daniel has any equity in the property. It is also observed that Ortansa stated that her husband's chapter 13 case is an asset of her case, *see* Tr. at 3/16/04 at 5, but that only would be so if the debtors had filed a joint chapter 13.[5]

Although the Plan provides for payments to be funded entirely out of her disposable income, a discussion of the Adversary Proceeding is appropriate to assess whether its value, if included in a modified plan, would support Ortansa's opposition to conversion.

On May 15, 2001, Ortansa commenced the Adversary Proceeding against the Estate of Bernice P. Richard (the "Estate"). On August 28, 2003, she filed an Amended Complaint (the "First Amended Complaint") which was similar to the original except for the addition of the Executors as defendants. On September 16, 2003, she filed separate "Complaint[s] of Liability" against George Wachtel, ABC Good Morning America, Sotheby's International Realty, Inc., Vanity Fair, Inc., In Style USA Inc., J.P. Morgan Chase & Co., Ninette S. Bordoff, Guardian ad Litem, and Lutz & Carr, Certified Public Accountants, LLP (collectively, the "Additional Defendants"). In addition, individual complaints, similarly titled, were filed against each of the Executors as well as the Estate.[6] On that date,

---

4. The testimony further demonstrated that Ortansa is liable for $24,644.36, Daniel is liable for $43,345.23, and both debtors are additionally liable for $32,687.17. The aggregate *amount of that liability is $3,610.11 more than the total amount attributed to the IRS liens by its representative. It is unclear whether that discrepancy is due to a mathematical error or if there is some overlap that reduces the amount. Nevertheless, since he testified to a lower number, the debtors are not prejudiced.

5. It is not apparent why the debtors elected to file individual chapter 13 cases since the majority of their assets and creditors are the same. While Ortansa stated in court that she had a desire to consolidate the cases, no motion for consolidation was filed even though the court explained such a filing was necessary for the issue to be considered. Moreover, the debtors have now had years to move to consolidate their cases. There is some

suspicion that the decision to file separate cases may have been motivated by a desire to further delay the proceedings. For example, Ortansa moved on June 18, 2003 to suspend her bankruptcy case pending the outcome of the Adversary Proceeding. *See* docket # 33. On that date, Daniel also moved in his case through a motion signed on his behalf by Ortansa to stay her bankruptcy case and the Adversary Proceeding. *See* docket # 36.

6. On February 5, 2003, the district court affirmed this court's decision that the Estate is an entity that cannot be sued under Connecticut law. On September 30, 2003, this court granted a motion to substitute the Executors as defendants for the Estate. Nevertheless, Ortansa continued to oppose the substitution of the Estate. *See* docket # 151 (misreading the district court's order by claiming the Executors' argument that the Estate was no longer a party to the Adversary Proceeding "maligned" the district court's decision).

she also filed a motion for joinder of the Additional Defendants.

On October 21, 2003, the court held that permissive joinder under Rule 20, F.R.Civ. P., made applicable by Rule 7020, would be granted to permit the addition of the Additional Defendants and that Ortansa would have until November 25, 2003 to file and serve any amended complaint to add the Additional Defendants.[7] *See* docket # 211.[8] Despite that order, Ortansa did not file an amended complaint until December 20, 2003 (the "Second Amended Complaint"). The substance and requested relief in the Second Amended Complaint is the same as the earlier complaints, and the "Complaints of Liability" which were separately filed on September 16, 2003 were attached as exhibits.

The Adversary Proceeding, as amended, is predicated upon allegedly unpaid architectural services Daniel provided to Bernice P. Richards (now deceased) over a ten year period on a project entitled "Fireproof House" (the "Project"). Ortansa asserts an indirect right to compensation for services she provided to Daniel during that period and a direct right to compensation for services she provided to Richards and the Estate on the Project.

The record is silent as to whether any of the Additional Defendants[9] were properly served, but for the purpose of this decision it will be assumed that they were. Giving the text of the Second Amended Complaint its most likely meaning, it appears that the liability of J.P. Morgan and Lutz & Carr, CPA, LLP is based on their alleged involvement with the Executors in authorizing payment, and the allegations against Good Morning America, Sotheby's International Realty, Inc., Vanity Fair, Inc. and In Style USA, Inc. are based upon their publication of statements relating to the Project.

Ortansa's claim against the Executors, to the extent that it is based upon indirect services she allegedly provided to Daniel, is unlikely to succeed. These claims are essentially predicated on spousal support she provided during that period, including maintenance of the home and personal companionship. Those services are too remote and disconnected from Daniel's architectural services to create a right for her to receive payment from his client. Even assuming he was in her debt, the fact that he might not be able to pay her, because he allegedly was not paid by the Estate, does not give Ortansa a claim against that party or related individuals or entities.

7. Even though the court's order granted Ortansa's motion to join the Additional Defendants and gave her more than a month to file the necessary pleadings, she has filed a notice of appeal of that decision. There are also outstanding appeals of interlocutory decisions denying her motion for a default against the Executors and substituting the Executors for the Estate in accordance with the district court's February 5, 2003 decision. Both appeals have been filed in the Second Circuit Court of Appeals because she claims her motion to withdraw the reference of the Adversary Proceeding, filed in the district court, prevents that court from reviewing the appeals.

8. Ortansa was also ordered to respond to the Executors' October 10, 2003 Interrogatories and Request for Production by November 25, 2003, which provided her an extension of 15 days beyond the 30 day time period provided by Rule 33, F.R.Civ.P., made applicable by Rule 7033. On December 29, 2003, the Executors filed a motion to compel which alleged that, despite the court's order, she still had not responded. That motion was not heard because the district court withdrew the reference of the Adversary Proceeding before the scheduled hearing date.

9. In the Affidavit, Ortansa did not include Sotheby's International Realty, Inc. and Vanity Fair Inc. as current defendants. *See* Affidavit at 4.

Even assuming Ortansa can demonstrate the liability of the Executors for direct services she allegedly provided, corresponding damages for those claims, according to papers she filed, are not likely to exceed $15,069.63. She specifically claimed that she is owed $13,000 for 12 computer drawings and $2,069.63 for 17 additional drawings she completed for the Estate. *See* docket # 20 at 2–3; docket # 22; docket # 23; and docket # 28; *see also* docket # 55 in case # 01–50330 (Attorney Austin's Statement in Support).

The Second Amended Complaint is more aggressive and demands relief for such items as her general living expenses, taxes, medical expenses, and the expenses of her mother's funeral. Her Affidavit similarly claims that her damages include the dependency and medical needs of her mother, the inability of her daughter to go to the college of her choice, non-pecuniary damages to her personal rights, the injury and interruption of her business, and injury to her real property due to, *inter alia,* the liens of the IRS. *See* Affidavit at 8–9. Those items obviously do not bear any direct connection to any alleged action of the Executors or the Additional Defendants. Thus, even assuming that Ortansa proves her allegations of liability, there would be no basis for finding any causal connection between that liability and the relief sought in her Second Amended Complaint.

> "[P]roximate cause" [is used] to label generically the judicial tools used to limit a person's responsibility for the consequences of that person's own acts.... [There is] a demand for some direct relation between the injury asserted and the injurious conduct alleged.

*Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 269, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

The arguments of counsel and the record demonstrate that any recovery in the Adversary Proceeding, while unlikely, would not exceed $15,069.63. That amount is woefully inadequate to enable her to fund a confirmable chapter 13 plan. *See supra* at 469–70. In the context of that observation, counsel appearing at the hearing argued that she is using the Adversary Proceeding as a means to impose unreasonable delay that is prejudicial to her creditors:

> As a defendant in the adversary proceeding, I feel that [we are] being held hostage not necessarily for the purpose of ever getting this matter for trial, but in order to continue this Chapter 13 proceeding ....

Tr. of 2/3/04 at 20 (counsel for the Executors); *see also* Tr. of 2/3/04 at 22 (chapter 13 trustee); Tr. of 2/3/04 at 33 (counsel for the IRS).

That assertion is buttressed by the fact that Ortansa waited six months after the district court's decision to file the First Amended Complaint, and then waited nearly two and half years to move to add the Additional Defendants. Moreover, she has moved on several occasions to stay the proceedings and to extend the time for discovery, and, as noted *supra* at n. 8, there are allegations that she has not responded to the Executors' Interrogatories and Requests for Admission. Thus, the record is rife with examples of Ortansa's efforts to delay the resolution of the Adversary Proceeding which, in turn, will necessarily delay the administration of this case.

### Postpetition Mortgage Payments

Ortansa has not made a mortgage payment to EMC since March 1999. While she initially claimed that she mistakenly paid the chapter 13 trustee the mortgage payments due EMC, she later testified that those payments were indeed § 1326

payments. *See* Tr. of 4/7/04 at 16. Since those were the only payments, the chapter 13 trustee understandably assumed that they were intended to honor her § 1326 obligation. Obviously, the same payments cannot be for § 1326 and the EMC mortgage, and in light of Ortansa's testimony, they must be considered § 1326 payments. But even if the payments were for the mortgage and not for § 1326, then she would have failed to meet her obligation under that section, which is, in itself, cause for conversion or dismissal. *See* § 1326(a)(4), discussed *infra* at 474–75.

### Conclusion

Even with the inclusion of the reasonable value of Adversary Proceeding, Ortansa cannot fund a chapter 13 plan. Accordingly, no scenario has been offered by Ortansa under which the further administration of her case under chapter 13 is warranted, and conversion under § 1307(c)(1) is appropriate. *See In re Henson,* 289 B.R. 741, 750 (Bankr.N.D.Cal. 2003) ("[The debtor] is simply not in a position to propose a confirmable Chapter 13 plan at this time. That is delay prejudicial to creditors at the very least.").[10]

### Conversion for Failure to Timely Make § 1326 Payments— § 1307(c)(4)

■ Section 1326 requires the debtor to "commence making the payments proposed by a plan within 30 days after the plan is filed." Ortansa's Plan, which proposes payments of $888.00 per month, was filed on April 9, 2001, and payments in that amount were therefore due beginning May 9, 2001.

An analysis of Ortansa's compliance with § 1326 is complicated by the fact that although she and her husband filed separate chapter 13 cases, they made combined payments for their § 1326 obligations. Moreover, as noted *supra* at 473–74, there is confusion as to whether checks they sent to the chapter 13 trustee were intended to be § 1326 or mortgage payments.

That aside, the evidence demonstrates that the payments were not timely commenced, consistently made, or in the required amount. The first payment was made on September 20, 2001, more than 4 months late. That payment was only $300, *i.e.,* $588 less than what was required under her Plan alone. *See* Affidavit Attachment. The timing of that first payment coincides with the filing of Daniel's case, and the $300 amount also coincides with the § 1326 payments due under his plan, leading to the suspicion that it was meant to satisfy only his obligation. Joint payments of $300 continued through April 26, 2002. No payment was made in May or June, 2002. On July 29, 2002, a payment of $1,215.87 was made. While all payments thereafter were in that amount, payments were still not consistently made. Specifically, no payments were made in April, May, August, September, October or November, 2003.

■ Ortansa attempted to excuse her failure to consistently make the required payments on her prosecution of the Adversary Proceeding, although in that filing,

10. Conversion of this case to a case under chapter 7 does not affect the pendency of the Adversary Proceeding in the district court, except that the chapter 7 trustee will be substituted as the plaintiff, who will then have the option to continue its prosecution if he or she determines that would be beneficial to estate. If the trustee decides to continue the action, the creditors will benefit from the services of an experienced bankruptcy. If, on the other hand, the trustee, with notice and court approval, abandons the Adversary Proceeding on the basis that it "is burdensome to the estate or that [it] is of inconsequential value and benefit to the estate," *see* § 554(a), Ortansa will then have the right to continue its prosecution.

*see* Docket # 39, she referred to them as mortgage payments. Beyond the fact, as evidenced by the record, that she was principally responsible for the extraordinary amount of pretrial activity in that proceeding, § 1326 obligations are not excused by or subordinated to a debtor's prosecution of an adversary proceeding.

 As has often been observed, bankruptcy is a privilege, not a right. The fact that Ortansa is appearing *pro se* does not relieve her of the obligations that the bankruptcy code imposes on debtors. As noted, this is her third case. The court has, on innumerable occasions, witnessed her familiarity with the code, rules, and court procedures. Moreover, she refused the court's suggestion that she apply for *pro bono* representation, stating that her previous *pro bono* attorneys were not to her satisfaction. *See* Tr. of 2/3/04 at 43.

Accordingly, since Ortansa has failed to satisfy the requirements of § 1326(a)(1), conversion under § 1307(c)(4) is warranted.

### EMC'S MOTIONS FOR RELIEF FROM STAY IN CASES 01–50330 AND 01–51006

 On December 1, 2003, EMC filed motions for relief from the automatic stay under § 362(d)(1), which in relevant part provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

§ 362(g) provides in relevant part:

In any hearing under subsection (d) ... of this section concerning relief from the stay of any act ...

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

As noted *supra* at 473–74, it has been concluded that the debtors made § 1326 payments rather than mortgage payments. Accordingly, EMC has not received a mortgage payment since March 20, 1999. That alone may be cause to grant EMC's motion for relief from the automatic stay even though its debt is protected by a small amount of equity. *In re Elmira Litho, Inc.*, 174 B.R. 892, 903 (Bankr. S.D.N.Y.1994). That conclusion is reinforced by the unchallenged testimony of EMC's appraiser that the residence is not being maintained.[11] *See* Tr. of 4/7/04 at 26. As a consequence, if EMC is delayed further, it is likely that the value of its collateral will be diminished and the erosion of its equity cushion will be accelerated, additional cause for relief under § 362(d)(1).[12] *See id.* at 902.

It is therefore concluded that EMC is entitled to relief from the automatic stay under § 362(d)(1).

For the foregoing reasons, it is ORDERED that Ortansa's bankruptcy case 01–50330 is converted to chapter 7 pursuant to 11 U.S.C. §§ 1307(c)(1) and (4); and

---

11. As noted *supra* at 471, the debtors' do not have any equity in the property.

12. The argument that EMC'S motion for relief from stay should be denied pending a future judgment in Adversary Proceeding is unavailing for the reasons stated *supra* at 471–73.

IT IS FURTHER ORDERED that EMC's motions for relief from the automatic stay in cases 01–50330 and 01–51006 are granted pursuant to 11 U.S.C. § 362(d)(1); and

IT IS FURTHER ORDERED, this decision is without prejudice to a trustee 7 filing an objection to the granting of relief from stay.